Frost, J.,
dissenting. Thomas J. Gantt was the administrator of John Ballantine, and the defendant was his surety. This was an action of debt on the administration bond. The defendant pleaded performance. The plaintiff, in his replication, set out, in substance, the condition of the bond, and that Melzar Collins and Mary his wife, one of the distributees” of the said John Ballantine, summoned the administrator to account in the Court of Ordinary, who did not appear; and the Ordinary,' “ having no other data than the inventory and appraisement” from which to ascertain the amount of the estate, “in consequence thereof, decreed that the said administrator is indebted to the said intestate’s estate in the sum of $1650, (the amount of the inventory and appraisement,) and that he do pay the same to the parties who may be legally entitled thereto,” “which said sum of $1650, with interest thereon, the said Samuel H. Mortimer, although often required, hath hitherto wholly neglected and refused to pay, and still does refuse,” &c.
The defendant demurred to the replication; and, among other causes of demurrer, shewed that the decree of the Ordinary does not establish that the plaintiffs are entitled to any distributive share of Ballantine’s estate, and “that the decree does not ascertain their shares by fixing any specific sum to be paid to them.”
I shall not, in this dissent, rely on the exceptions which may be taken to the insufficiencies of the breach of the condition of the bond, set out in the replication; that the decree of the Ordinary finds the administrator is indebted to the “intestate’s estate,” not to the distributees; that it is wholly uncertain what may be the share of “one of the distributees,” when the number of them is not mentioned; that the plaintiffs assign, as a breach, the default and refusal to pay to “one of the distributees” the whole sum decreed to be due to the “ intestate’s estateand that, not *280 the default and refusal of the administrator, but of the defendant. But I shall consider only the assigned causes of demurrer which have been stated.
There can be no valid objection to the defendant’s pleading. The subject of the action was the administration bond. The cause of action was an alleged breach of the condition of the bond. If the plaintiff, in his replication, had set out the condition of the bond untruly, or partially, or contrary to its legal effect, the defendant might have craved oyer, and set out the condition in lime verba. The effect of so doing would be, to make the condition, as set out by the defendant, a part of the plaintiff’s precedent pleading; and the defendant would then have every benefit of defence which the entire condition might afford, in the same manner as if the condition had been inserted entire in the plaintiff’s replication. The plaintiff was certainly not bound to set out the condition of the bond in his replication, in hcec verba. It is sufficient for the plaintiff, in pleading a deed, to set out only the particular stipulations or covenants, the breach of which constitutes his'cause of action. (Chit. PI. 305.) It was still more obviously unnecessary for the plaintiff to set out the decree of the Ordinary in his replication. The action was on the bond, not on the decree. The decree was only evidence of the alleged breach of the condition of the bond, and of the amount of damages. The breach assigned was, that the administrator had been cited before the Ordinary to account for the estate of his intestate, and had made default; and the Ordinary had decreed that the administrator was indebted to the estate of the intestate $1650, <fcc. The decree was produced in evidence to prove these facts. Ordinary vs. Caldwell, (3 McC. 225.) For this reason alone, the plaintiff was not bound to plead the decree, with proferí. But it is never necessary to plead a judgment, or matter of record, with proferí, because it is not in the possession of the party pleading, nor can he produce it. It is equally accessible to both parties. From what has been said it is apparent that the defendant could not crave oyer of the decree; and that it was unnecessary for his defence to set it out in his pleading.
*281 The defendant found, in the plaintiff’s own statement of the condition of the bond, and in his assignment of the alleged breach, grounds of legal objection to the plaintiff’s recovery. These objections he has presented by demurrer. The causes shewn for demurrer are apparent in the replication. Judgment for or against the demurrer must depend on the sufficiency in law of the causes shewn to bar the plaintiff’s recovery.
The questioú presented by the demurrer is, whether it is a breach of the condition of the administration bond, that the administrator has not paid, to one claiming to be a distributee, what he may demand, as his share of the intestate’s estate, when no distribution has been decreed in the Court of Ordinary by which the amount, to be paid to the claimant, has been ascertained.
The Ordinary only decrees that the administrator is indebted to the “intestate’s estate” the sum of $1650, and that the administrator “ do pay the said sum to ■ the parties who may be legally entitled thereto.” The effect, therefore, of maintaining this action is, that this Court must make distribution of an intestate’s estate in an action by “one of the distributees” against a surety to the administration bond.
By the statute of distributions, 22 & 23 Car. 2, (2 Stat. 523,) the Ordinary is required to grant administration of the estates of intestates, and to take bond from the administrator. The condition of that bond is exactly copied in our executor’s Act of 1789, except that, in the condition of the bond prescribed by the last Act, respecting the rest and residue of the estate which shall remain after a full accounting, the administrator is obligated to pay the same “to the person or persons respectively entitled;” whereas, by the statute of Charles, the administrator is obligated to pay the said residue “to such person or persons respectively as the said Judge, by his decree or sentence, pursuant to the true intent and meaning of this Act, shall limit and appoint.”
By the next section it is enacted that the said Ordinaries and Judges (of the ecclesiastical Courts,) respectively shall and may, and are enabled to proceed and call such administrator to account touching the goods of the intestate, and to make just and equal *282 distribution of what remaineth clear, amongst the wife and children, &c. of the intestate; provided, however, that all Ordinaries and every other person (ecclesiastical Judge,) who by this Act is enabled to make distribution of the surplusage of the estate of any person dying intestate, shall distribute the whole surplusage in manner following. By the next section it is declared between what persons the estate of the intestate shall be distributed.
The jurisdiction thus imposed on the Ordinary to make distribution of the estates of intestates, has, since the settlement of the colony, been exercised in this State, and recognized by the superior courts, as his peculiar, and, with respect to the law courts, exclusive jurisdiction.
The Act of 1839, conferring on the Ordinary power to appoint guardians for infant distributees, and limiting that power to cases where the distributive share does not exceed $1000, by a proviso, saves the unrestricted exercise by the Ordinary, of the powers now vested in him, “ to pronounce decrees for the settlement and distribution of intestate’s estates, or to appoint guardians ad litem.” (11 Stat. 47.)
The administration of the estates of intestates, from the earliest period of English law, has been vested in ihe ecclesiastical courts; and no warrant nor authority can be found for the interference of the courts of common law with that jurisdiction. The effect of the judgment, in this case, is to draw that subject of the Ordinary’s jurisdiction into this court.
The courts of common law have only acted in aid of the court of Ordinary, to enforce its deeres in matters of intestacy, by an action on the administration bond. Accordingly, it has always been held that this court will not go into the accounts of the administrator ; and will not hold plea of debt on the administration bond by a distributee, unless it be to recover a sum certain, decreed by the Court of Ordinary.
In Simkins vs. Powers, (2 N. & McC. 214,) the plaintiff was nonsuited in an action on the administration bond to recover a distributive share; because no distribution had been decreed. In the judgment of the Court, the condition-of the bond under *283 the Act of 1789, is set out, to the effect, that the administrator shall make a true account, “ and all the rest of the said goods, chattels and credits, which shall be found remaining upon the account of the said administration, the same being first allowed by the said court, shall pay and deliver unto such persons, respectively, as are entitled to the same, by law.” And on the construction of this clause of the condition of the bond it was held that “ a distributee is .not entitled to a remedy by action upon the bond till distribution decreed; for, until the estate is settled up, how can it appear what is the dividend to which he is entitled V “ All that is due to and payable from the estate, is there to be accounted' for by the administrator; and.' when a final adjustment is made and the account closed, it is the duty of the Ordinary to decree distribution of what remains. What is it that the administrator is to deliver and pay over ? I answer in the words of the Act, that which has been first allowed by the Court of Ordinary.” In Jones vs. Anderson, (4 McC. 114,) which was an action by a creditor against the sureties to an administration bond, one of the causes of demurrer was, that the administratrix had not been summoned before the Ordinary to account, and that, therefore, the suit could not be maintained. In support of the demurrer, the cases of Simkins vs. Powers, and the Ordinary vs. Williams & Parkman, were relied on. Colcock, J. delivering the opinion of the Court says: — “the cases referred to, are all cases of claims by distributees; and there does appear to be some room for a distinction as to their claims and those of a creditor, as the condition of the bond does, indeed, refer the adjustment of the claims of distributees more directly to the Ordinary than to any other tribunal. But when the rights of distributees have been settled in a Court of Equity, and the administrator fixed with a liability, we have permitted the parties to sue on the bond and take judgment against the sureties for the amount established to be due by the other tribunal and, for this, he cites Cureton vs. Shelton, (3 McC. 412,) which was tried before Colcock, J. It was an action against the surety to an administration bond. The breach assigned *284 was, that the administrator “ did not pay to Asa Cates, Aaron Cates, and Kobert Cooper and wife, $747 57, being $249 19 each, their respective shares of $3364, with which the administrators were charged on account of their administration of the estate, in an account, had by order of the Court of Equity, in a suit wherein the distributees above named were complainants, and the administrator and others were defendants, and of which sum of $3364, the administrators, by a decree of the said Court were ordered to pay to the said distributees the amounts to which they were respectively entitled.”
The “others,” who were defendants, must have been the other distributees of the intestate, who were necessary parties to the bill for an account of the estate. The account was taken before the Commissioner, and it appears that the specific amounts to which the plaintiffs were entitled, were established by the report and decree ; for “ the jury were directed to find for the plaintiff the amount of the Commissioner’s report, and interest.” The case of Anderson vs. Maddox, (3 McC. 237,) was an action on a guardianship bond against the sureties. “ The only question in the case,” says Judge Nott, “ is, whether an action can be maintained in a court of law, on a guardianship bond, before the accounts have been adjusted, and a specific sum decreed to be paid over.” The question was decided in analogy to debt on an administration bond; and it was held that, if the guardian (appointed by the Ordinary) “ appear before the Ordinary and settle his accounts, and a sum certain is decreed to be paid, that sum may be recovered on the bond in a court of law.” The court “ cannot entertain jurisdiction as long as the accounts remain unadjusted, and the settlement of the accounts be involved in the issue.”
In each of the cases of Lyles vs. McClure, (1 Bail. 7,) Ordinary vs. Robinson, (1 Bail. 25,) Ordinary vs. Patton, (1 Bail. 130,) Mitchell, Ordinary, vs. Connolly, (1 Bail. 203,) a decree of the Ordinary, ascertaining the amount of the distributive share sued for, had been obtained before the action was brought on the administration bond. In the Ordinary vs. Robinson, *285 Judge Nott says: — “ the decisions in our courts in cases of this sort, I think, have been very uniform and consistent. It has been decided that an action cannot be maintained at law on an administration bond until there has been a decree, either in the Court of Ordinary or Court of Equity, ascertaining the amount due.” If it were otherwise, “the effect of such a proceeding would be to draw the cases from those tribunals, to whose jurisdiction such, matters properly belong, to a court of law, which has no jurisdiction over the matter.”
Besides the usurpation of jurisdiction, to maintain an action on the bond for a distributive share of an estate, without any decree of the Ordinary, ascertaining and adjudging the precise amount of the share, must draw into this court the most complicated subjects of account in the administration of an estate. A distributive share is not necessarily an aliquot part of the balance of an estate remaining after payment of debts. There are matters of mutual account between the distributees for maintenance, education, payments and advancements, all of which this court must adjust and settle in cases where the distributive share of the plaintiff and other parties may be affected by the state of the account.
How is the court to do this in a suit by one distributee 1 His distributive share must be adjusted on his ex parte shewing; for the Court has no power to call in the other distributees and make them interplead. After judgment is given against the sureties for a certain aliquot part of the residue, in successive actions by the other distributees, it may be shewn that the plaintiffs in the preceding actions had recovered a larger aliquot share than they were entitled to; or that their aliquot share was subject to large deductions for payments and advancements received, to the diminution of their aliquot part. The last suitor may thus be shared out of any remedy on the bond.
In the Archbishop of Canterbury vs. Tappen, 15 Eng. C. L. R. 176, it was decided that an administrator is not, by the condition of the bond, (22 and 23 Car. 2,) bound to distribute the surplus of the intestate’s estate, until a decree, directing him to *286 So so, has been made by the Ecclesiastical Court. Lord Ten-terden discusses fully all the terms of the condition of the bond; and concludes that it cannot be a breach of the condition of the bond not to pay over to distributees the surplus before their distributive shares are ascertained by a decree of the proper court. He says this is necessary for the protection of the administrator when the claimants are numerous and of remote kindred to the intestate, whose proportions he may not know; and if he pays to one person not entitled, may be compelled to pay over again to another who is equally entitled.
On these grounds, I dissent from the judgment of the court; because it invades the jurisdiction of the Court of Ordinary; and draws into the common law courts a subject of his jurisdiction which, by express enactment, is assigned to the Ordinary; and since the settlement of the State, has never been claimed by the law courts. It is, moreover, a subject of which it has been, over and over, judicially declared that a common law court is incompetent to take cognizance.
Wabdlaw, J. concurred.

Motion dismissed.